CLIFFORD v. PRESS PUB. CO. et al.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

1. LIBEL—NEWSPAPER CORPORATION—MALICE OF REPORTER—PUNITIVE DAMAGES.

In an action for libel it is competent to prove, as against a newspaper corporation, the ill will or malice of the reporter who wrote the article, for the purpose of recovering punitive damages.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Frederick W. Clifford against the Press Publishing Company and Judson J. Worrell. From a judgment for six cents damages for libel, and from an order denying a motion for new trial, plaintiff appeals. Reversed. See 77 N. Y. Supp. 1123.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

William McM. Speer, for appellant.
John M. Bowers, for respondents.

O'BRIEN, J. There are two defendants,—the Press Publishing Company, which published, and Judson J. Worrell, the reporter, who wrote, the libelous article. It consisted of the statement that "Jacob Dascher, who was shot some time ago in Stapleton by Frederick Clifford, a saloon keeper, on the corner of Canal and Bay streets, during a street fight, was discharged yesterday." The accusation is admitted by both defendants to be wholly false, and it appears that there had previously been published in the paper accounts of the same shooting, correctly giving the name of the man, who was the plaintiff's brother, and further stating that he had·been arrested and held to await the action of the grand jury. The contention upon the trial was whether it was intentional.

It is conceded that in actions of this character the amount of damages is peculiarly within the discretion of the jury, and, unless for error in rulings upon evidence or in the court's charge to the jury upon the subject of damages, a verdict will not be interfered with or disturbed. What the appellant's attorney complains of is the refusal of the learned trial judge, upon the examination of his own client and upon the cross-examination of the reporter, to permit him to prove that the reporter in the publication was actuated by express malice through ill feeling against the plaintiff, and he urges that evidence of such express malice should have been admitted for the purpose of enabling his client to obtain punitive or exemplary damages against the Press Publishing Company. That such evidence was competent as against the reporter was recognized by the trial judge, and the rulings objected to were all directed to excluding the evidence as against the corporation which published the article.

The several exceptions taken to the rulings, therefore, form the basis of the single substantial question presented on this appeal. That question is whether it is competent in actions for libel to prove, as against a corporation publishing a newspaper, the personal ill will or express malice and enmity which the reporter who wrote and sent in the libelous article for publication by it entertained against the person libeled. The complaint herein differs from the usual one in a libel suit, in that it alleges express malice, and further alleges that the article was inspired by personal enmity, and was published for the purpose of doing the plaintiff a specific injury. In support of these allegations, the plaintiff sought to prove that express malice existed on the part of the reporter who wrote and sent the article to the newspaper; and the question, therefore, to which we will direct our attention, is whether such express and personal malice on the

part of the reporter is imputable to the corporation, so as to make it liable to respond therefor in exemplary damages.

The learned trial judge justified the rulings excluding all evidence of express malice on the part of the reporter as against the newspaper corporation upon the authority of Krug v. Pitass, 162 N. Y. 154, 56 N. E. 526, 76 Am. St. Rep. 317. We have had occasion to discuss that decision in two cases in this court. McMahon v. Publishing Co., 51 App. Div. 488, 64 N. Y. Supp. 713; Potter v. Publishing Co., 68 App. Div. 101, 74 N. Y. Supp. 317. In Krug v. Pitass the suit was brought against three individuals, one of whom was Pitass, the proprietor of the newspaper, another the editor, Slisz, and the third defendant was the writer of the communication which was regarded as defamatory. The point directly involved and decided therein was that it was incompetent and inadmissible to prove personal ill will entertained for many years by one of the defendants, who knew nothing of the article until after the publication, as against the other defendants, who had no knowledge of the existence of such ill will, and who were not influenced or affected thereby in the part that they had in the publication. It was further said in the opinion:

"Moreover, the malice of one defendant cannot be imputed to another without connecting proof. 'If two be sued, the motive of one must not be allowed to aggravate the damages against the other.' Bigelow's Odgers, Lib. & S. 296; Post Co. v. McArthur, 16 Mich. 447; Craker v. Railway Co., 36 Wis. 658, 17 Am. Rep. 504; Haines v. Schultz, 50 N. J. Law, 481, 14 Atl. 488; Clark v. Newsam, 1 Exch. 131; Carmichael v. Railway Co., 13 Ir. Law R. 313; Robertson v. Wylde, 2 Moody & R. 101."

Although in this statement there is seemingly no qualification in the application of the rule to individuals, as distinguished from corporations, we think that an examination of the cases relied upon, together with the reason for the rule, requires that such a distinction should be observed. Many railroad cases can be found, including those above cited, wherein it has been held, in an action against a railroad corporation, that the corporation could not be held responsible for the malice or gross negligence of agents; but with the growth and development of corporations has come the tendency of recent decisions to extend the liability of corporations on such acts. Be this as it may, however, the distinction between railroad cases and libel suits has been clearly pointed out in the dissenting opinion of Judge Davis in Samuels v. Association, 9 Hun, 294, approved by the court of appeals in 75 N. Y. 604; and as therein shown it would tend to mislead, rather than to aid, to refer to railroad cases for the purpose of determining what should be the rule of damages in libel suits.

Omitting, therefore, the railroad cases cited in Krug v. Pitass, supra, we find that Haines v. Schultz, Robertson v. Wylde, and Clark v. Newsam, therein referred to, were all actions against individuals, in which the question whether corporations may be liable for the malicious acts of their agents was in no way involved. The only case of those therein mentioned where suit was brought for libel in which the question was presented is that of Post Co. v. McArthur, 16 Mich. 447, it there being held that "a publisher of a newspaper should

be exempt from any aggravation of damages on account of the express malice of his subordinates for any libel published without his privity or approval."

In this state, however, the question is an open one; it never having been decided whether a newspaper corporation in a libel case can be made responsible for the express malice of one of its officers or agents. In disposing of this question it becomes necessary to consider the principles that govern the liability of corporations and the damages which may be recovered against them; and in that connection it is important not to be misled by early decisions which were rendered before the growth of corporations, and before the law relating to them had been discussed. The rules which formerly governed the liability of principals for the acts of agents have been unquestionably modified by the growth of modern corporations. Thus, the rule that an individual principal could not be held liable for the willful wrong of an agent or employé has yielded to the policy which demands that carrier corporations should be held to the strictest responsibility. And there is abundant authority at the present time for holding corporations civilly liable in their corporate capacity for all torts which injure others, whether acts of omission or commission, for negligence merely, or for direct violence; and that, too, in punitive or vindictive damages. With respect to publication of libels, this court has recently said in the case of Stokes v. Association, 72 App. Div. 184, 193, 76 N. Y. Supp. 429:

"As corporations engaged in the publication of newspapers can act only through their officers or agents, the corporation is liable for the acts of its responsible officers or agents, upon whom it has conferred the power to determine what should be published, and their acts in relation to the publication of the newspaper are certainly competent evidence in relation to the publication and the motives with which it was made."

It is self-evident that express malice on the part of a corporation can be proved only by the acts of its officers, agents, and employés; and, if their personal ill will or bad faith in connection with the publication of a libel is not imputable to it, then it follows that there can be no such thing as express malice upon the part of a corporation, and we should be obliged to go to the length of holding that a newspaper corporation is not liable in exemplary damages for express malice with respect to any article published, no matter what may have been the motives of those who, acting for the corporation, are on its behalf responsible for the act of publication, and that no evidence of such motives can be shown for the purpose of enhancing damages.

Diametrically opposed to this is the rule in favor of the corporation, which has been many times sustained, to the effect that care, good faith, and the absence of personal ill feeling on the part of those responsible for the publication, could be shown in mitigation of damages. In fact, the present record shows that this defendant corporation received the benefit of that rule, because it was permitted to prove that the publication was made in the ordinary course of business, and the misstatement was a mere newspaper error, made without any intention of injuring the plaintiff. Such evidence, moreover,

was in part given by the reporter, who was permitted to state that the mistake was entirely unintentional; which testimony, and more to like effect, was' for the purpose of mitigating the damages, and, as shown by the size of the verdict rendered, did mitigate them.   On the other hand, however, the plaintiff was prevented, as against the corporation, from giving, for the purpose of enhancing damages, any evidence of express malice and enmity on the part of the reporter. It has been frequently said that "it is a bad rule that does not work both ways"; and, although expressions may be found in decisions to support the ruling of the learned trial judge, we are referred to no case of binding authority wherein the question was directly presented, and wherein it was held, since the extension of the rule of liability of corporations for the acts of their agents, that in libel suits a corporation is not responsible for the motives of its officers and agents. Unless so responsible, it could never, as pointed out,' be actuated by express malice; for since it is merely a legal entity or artificial being,. and entirely impersonal, it could never in and of itself have motives· for its actions.   A· corporation can act only through its officers, directors, employés, and agents, and, unless affected by their acts and motives, it could never be affected at all.   It is true that a resolution of its board of directors sanctioning its publication, or the act. of the chief editor or publisher, would be a more formal ·and direct: way of expressing the 'will of the corporation than would be the act· of some subordinate agent or employé.   It would yet remain, however, that the act of a board of directors, or of the executive officers, editors, or publishers, would be binding upon the corporation only because it is through such agencies alone that the corporation is moved to act at all.   It follows, we think, that, though a board of directors or the executive officers are of a higher grade, they are still but the agents of the corporation, just as are reporters while acting within the scope of their employment for the corporation.

If, influenced by ill will, a board of directors, by formal resolution, should conclude to libel some third person, we do not think that for a moment it would be denied that the motives of the directors which led to the passage of the resolution would be competent evidence as tending to show express malice on the part of the corporation.   If this is so, following logically along the same line of reasoning, although the scope in which a reporter can act is limited by the field of employment to which he is assigned, he is, nevertheless, within that field the agent of the corporation; and, just as in this case the reporter was permitted to testify that the error in the name was an unintentional mistake, we think the plaintiff might have been allowed. to prove, if he could, that this statement was untrue, and that the· reporter was actuated by personal ill will, and intentionally sent in, the article for publication for the purpose of injuring the plaintiff.

We have reached the conclusion, therefore, that it is competent in libel cases to prove, as against a newspaper corporation, the motives which inspired the publication, and that where they are shown ' to be good they may be relied upon for the purpose of mitigating· damages, and if bad of enhancing them.' It follows, as the motives. of a corporation can only be shown through the acts and feelings of.

its agents and officers, that it is competent to prove, for the purpose of recovering punitive damages, the ill will or malice which existed at the time on the part of those who were responsible for the publication of the libel, and which it can be shown influenced the publication.

We think, therefore, that the exceptions to the rulings referred to should be sustained, and that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN and HATCH, JJ., concur.

INGRAHAM, J. (dissenting). As stated in the opinion of Mr. Justice O'BRIEN, the several exceptions taken to the rulings, therefore, form the basis of the single substantial question presented on this appeal. That question is whether it is competent in actions for libel to prove, as against a corporation publishing a newspaper, the personal ill will or express malice and enmity which the reporter who wrote and sent in the libelous article for publication by it entertained against the person libeled. This question is distinct from that presented as to the general liability of a corporation engaged in the publication of a newspaper for publishing without justifiable cause a false and defamatory statement received from one of its reporters or agents. The rule has frequently been laid down by this court that although such a corporation acts through its officers and agents, for the acts of the latter the corporation is responsible both in compensatory and additional damages to the person so injured. The rule of damages discussed in all these cases is to be distinguished from the rule to be applied in the case at bar, wherein the complaint differs from the usual one in a libel suit, in that it alleges express malice, and alleges, further, that the article was inspired by personal enmity, and was published for the purpose of doing the plaintiff a specific injury.

There is no doubt that, under certain circumstances, such, for instance, as where there has been a repetition of a libel, or wanton carelessness in publishing what those in charge of a newspaper know or should know to be false, evidence of such facts would be competent as tending to show express malice on the part of the corporation. In these supposed instances the act of publishing the libel would be the act of the corporation itself, although accomplished through its officers and agents, and in that respect the officers and agents would be representing the corporation in such a way as to make the ill will so shown not purely personal enmity on their part against the person libeled, but malice on the part of the corporation. Here, however, the plaintiff seeks to obtain punitive damages against the corporation by proving that express malice existed on the part of the reporter who wrote and sent the article to the newspaper; and the question, therefore, to which we will direct our attention, is whether such express and personal malice on the part of the reporter is imputable to the corporation so as to make it liable to respond therefor in exemplary damages.

Expressions can be found in some opinions indicating that the judges who wrote them inclined to the view that actual malice on the part of the agent was admissible as against the principal; but so far as our examination has extended we have found no case in which this question was directly involved and expressly decided in favor of the plaintiff's contention, and we must therefore regard such expressions as purely obiter dicta. As matter of first impression, it would seemingly follow, upon the principle of respondeat superior, that a corporation is responsible for the acts of its agents whether they be negligent or malicious, provided they are acts within the scope of the agent's employment; and, therefore, were the question for the first time presented, one might be favorable to the view that evidence of express malice on the part of the agent is competent as against the principal or corporation.

In Haines v. Schultz, 50 N. J. Law, 481, 14 Atl. 488, it is said: "The maxim of respondeat superior is a rule of limitation as well as of liability. If a principal must on the one hand answer for his agent's wrong doing, on the other hand his liability is circumscribed by the scope of his agent's employment, unless there be proof of a ratification by him of his agent's misconduct." And it was therein directly held (headnote) that, "where libelous language is inserted in a newspaper by a reporter without the knowledge or consent of the proprietor, the latter is liable to the extent of compensatory damages, and that he can be visited with punitive damages only upon proof from which his approval of his employé's conduct may be legally inferred."

In this state, in the case of Krug v. Pitass, 162 N. Y. 154, 56 N. E. 526, 76 Am. St. Rep. 317, the statement in Bigelow's Odgers, Lib. & S. 296, is quoted with approval to the effect that, "if two be sued, the motive of one must not be allowed to aggravate the damages against the other. Nor should the improper motive of an agent be matter of aggravation against his principal,"—citing the cases of Post Co. v. McArthur, 16 Mich. 447; Craker v. Railway Co., 36 Wis. 658, 17 Am. Rep. 504; Clark v. Newsam, 1 Exch. 131; Carmichael v. Railway Co., 13 Ir. Law R. 313; and Robertson v. Wylde, 2 Moody & R. 101. Examining such of those cases as relate to libel suits, it will be found that they support the rule formulated in Bigelow's Odgers, Lib. & S., supra.

Thus, in Post Co. v. McArthur, supra, it was said, in referring to the damages recoverable against the publisher and owner of the paper: "And no amount of express malice in his employés should aggravate damages against him, when he has thus purged himself from active blame." In Robertson v. Wylde, supra, it was held (headnote) that, "in an action for libel against the publisher of a magazine, evidence of the writer's personal malice against the plaintiff is inadmissible."

We appreciate the force of the argument that under this rule, as a corporation acts only through officers, agents, and employés, it will be difficult, if not impossible, to ever prove express malice on the part of a corporation. Still it is no part of our duties to point out the difficulties which would prevent the obtaining of exemplary dam-

:ages on this ground, our efforts being solely to ascertain the law on the subject, and, when we conclude that it is settled, to follow it. The reason for the rejection of all evidence of express malice on the part of the agent as against his principal seems to be that an in- ·dividual or corporation engaged in publishing a newspaper is· respon- sible in damages merely to the extent warranted by the nature of the libel, the character of the newspaper which gives it circulation, the ·extent to which it is circulated, and the injury that for these ·causes ·results to the person libeled; and that it would be unduly extending ·the rule of damages to hold, on the ·principle of respondeat superior, ·that, when there is no privity, consent, or knowledge on the part of the editors or publishers of the malicious motives of the reporter, they should nevertheless be subjected to further exemplary damages resulting therefrom, when redress may be had against him personally. As said in Post Co. v. McArthur, supra: "There is no doubt of the duty of every publisher to see, at all hazards, that no libel appears in his paper. Every publisher is therefore liable, not only for the esti- ·mated damages to credit and reputation and such special damages as may appear, but also for such damages on account of injured feel- ings as must unavoidably be inferred from such a libel published in a paper of such a position and circulation."

We think that the rule is settled which supports the rulings to ·which exceptions were taken, excluding evidence of express malice of the reporter as against the newspaper· corporation. It follows, therefore, that the judgment and order appealed from should be affirmed, with costs.